Mr. Abu Sharer you're up first. If I butchered your name, I'm sorry. That's not, that's correct, Your Honor. Thank you very much. May I please introduce the court? I think our contention here in this court, in this case, is that the agency denied Ms. Gonzalez the due process by denying her the right to counsel in her second appearance. And number two is we believe that the agency abused its discretion and due process by finding the applicant's application being abandoned for non-compliant with the biometric. Number three. I just want to get, if you can help me, if I can get the chronology straight in this. By the final hearing on February 8th, Ms. Gonzalez had counsel, correct? That's correct, Your Honor, yes. And I think she had counsel by the October 20 hearing too, correct? That's correct, Your Honor, yes. So I'm trying to figure out how she was denied counsel at a point in time that makes any difference in this case. Yes, Your Honor. First of all, the right of counsel is guaranteed under the Fifth Amendment to address against versus OSHRA. In the second hearing when she appeared, she did not appear with counsel after one month continuous. She demanded that she needed an attorney, but the judge went on and asked her or forced her to leave and did not get willing and voluntary waiver. The judge found out that she had done absolutely nothing. She did not make one call, did nothing in the months that he gave her to find a lawyer. Is an immigration judge just supposed to put up with you don't do anything at all? I think, Your Honor, this is what the judge found, but we disagree with the judge. That was the words from her mouth. She said she did not make a phone call. She did not contact any attorneys in the months she had been given to do that assignment and be warned that it was important to do that and then shows up and says, well, I need more time. I had headaches. Yes, she said that, Your Honor. She did not. She had headaches. Then she was a lot of headaches. Then she did not have a job. Then just, you know, she was in the country and she couldn't locate an attorney. So I think that it was very reasonable for that case in specific and with the harm that she has suffered in her life, at least the judge would have given her a short continuous to seek an But I just want to say, didn't the immigration judge give her a list of free attorneys that she could use? She didn't use them. But anyway, there are certain persons who will serve free. Yes, Your Honor. But the problem is, the problem is, it wasn't that hearing is about the pleadings is about the judge did go beyond what the pleading is or are. The petitioner did not understand the nature of proceedings. Then number two, he inquired about the merit of the case. And in the end of that hearing, he said, your case is difficult. That means I don't see any difference with other cases where the judge said you have baseless claim. So I think. Oh, he didn't. He didn't say the claim was baseless. He said it would be difficult. But then didn't he go and explain to her how she could try and go ahead and establish the case and make the best record that she could? He went through that in some detail. Well, the judge tried, but I mean, the respondent did not understand the nature and to the extent of what the judge was inquiring about. Even he did inquire about about things that should be questions when a president should. I mean, the council should be present where it has to do with eligibility for asylum. Where is the relocation? Which is both border and the questions. So this is what our problem in that case where she insisted for a very reasonable continuous. Then also, she said that she wanted an attorney and she did not willingly or voluntarily waive the right for that. So here's counsel. Let me just I want to be able to switch to the biometrics in a minute. But I'm missing something here in terms of timing. The denial of the second continuance was in September, correct? That's correct. Yes. Okay. There's a hearing in October and she shows up and she's represented by counsel. Yes, that's correct. And the final hearing is until February. And she's represented by counsel at that hearing too. Yes. So I'm not sure how she was harmed by denial of the second continuance because she managed to find counsel between that to your honor. But what I'm talking about is not just about when she found counsel in the last hearing or the one before the hearing is about what happened in the second hearing where the judge. Well, that's it. That's a separate issue from whether or not she was given sufficient time to find counsel. She was given sufficient time to find counsel. We know that because she did. Whether or not. And you're not here arguing to us that the second hearing should have been continued. That's not in your briefing. No. But put that aside for a second. I want to focus on the biometrics. And I want to know what counsel did as opposed to Ms. Gonzalez. As I read this record, it was at the October hearing, October 20 hearing, represented by counsel that the IJ said you're going to need to get biometrics. And simpler for me to refer to them as fingerprints. You're going to need to get fingerprints. You're going to need to submit this card to USCIS, this application. And then they'll either it says they'll either contact you and set up a date for it. If they don't, you're it's your responsibility to call them. It appears counsel actually filed that application because you have a certified receipt. But the testimony later when the judge says, why didn't you get the fingerprints? His counsel says, we have so many of these, we don't follow up on them. Is that good cause? First of all, judge, before I answer this question under MCDP, the government itself has to ask for a reasonable time for the biometric to be done, not the judge. So here the judge made himself acting on behalf of the government. So this is basically one error that the judge did not acknowledge or the BIA did. Even in the ruling under this precedent, it shows the government has to do it. Then let me say here, we have to ask a any efforts to do her biometrics. Yes, she did. Why? Because two weeks after the hearing, we did send this notice out to the service center to get the biometric taken. Then now it's a duty on the government to send her a biometric notice. And this is very common in the immigration court that all of these things happening all the time delay in issuing the biometric notices. So I did not consider that the respondent by sending out their biometric to the service center did have good cause to show. Well, the judge did consider that, but his response was that the instruction said that if you don't hear back within a period of time, you must call this number and that was not done by anyone. Well, I do understand your honor. That's what the instruction says. But however, in really practice in immigration court, we only send these notices out and the government is obligated to send the notice for biometric. I don't think the petitioner is on the government for not sending this notice out or back to the regulations. Very clear that you have to follow the instructions, the instructions. You don't say that if you don't hear, you have to call. And the attorney's response at the hearing was we don't chase around every single biometrics notice in the firm. So he just was like, we don't do that. We don't follow it up. Is that? And so the question is, was it abusive discretion for the IJ to say that isn't good cause that I don't chase around? No, because your honor, the judge violated the procedure from day one when he handed out the biometric notice because the government itself, by regulation and under matter of NCBD, the government has to request the reasonable time because sometimes it takes months to get this biometric back. So maybe this statement was misstated, but this is like the general practice in immigration law. This is how it's very common for these notices to arrive without even inquiring about it. Then an 800 number you're inquiring about biometrics, it's very difficult to get an answer from the CIS regarding this matter. This is very common in immigration matters. Counsel, I think we've taken you over. We'll give you a minute for rebuttal and let's hear from the government. May it please the court, Claire Workman for the respondent. The agency acted well within its considerable discretion in determining that petitioner had abandoned her asylum application. Can we start with the issue of bias? Because the thing that troubles me here is that the judge, when he realized that the counsel was going to be an hour late, said, I'm not going to wait around for an hour and I'm going to set this for a year later. And then the government counsel stands up and says, oh, we don't have biometrics. And then he's like, oh, okay. Now we're going to just look retaliatory, that whole confluence of events. Well, I'm sorry. What was the last part of your question, your honor? He went from picking the case for a year because the lawyer was late to all of a sudden when he realized the biometrics were missing, just dismissing the case on the merits and finding everything abandoned. Why isn't that indicia of some level of bias? Oh, because your honor, the immigration judge was merely holding the petitioner to her regulatory burden to make sure that her biometrics were completed by the time of the next hearing. I'm sure she would have had her biometrics in a year. Oh, your honor, I don't think he was going to set it for a year because she had requested an expedited hearing, which requires the judge. But when the lawyer was late, he said, I'm going to set it for January 2019, which was 11 months later. And I'm sure she would have had her biometrics. So why did he pivot from, I'm going to give you 11 months to, oh, you're out the door. Well, I think because biometrics are essential for... Of course they are. That's not the issue. The question that Judge Collins is asking you is this, when this hearing began, the immigration judge seemed to say, I'm going to set the merits hearing for about a year from now, January 2019. The lawyer is late. He gets in an exchange with the lawyer. We don't have to figure out who's right or wrong about that exchange. Then he says, oh, there's no biometrics. I'm going to dismiss. And he didn't say at the beginning, I'm going to dismiss because there's no biometrics. He said, I'm going to put this off for a year. So Judge Collins is asking you, why can't we read this record as saying, the reason I dismissed was not because the biometrics weren't there. It was because I was mad with the lawyer. Oh, Your Honor, he did not say he was going to dismiss right when he said he was going to reset the hearing. He first asked petitioner because she was pro se at that point, why she had not completed her biometrics. And she gave an answer that she didn't know what she was supposed to do. And he said, well, you were given instructions. You said on the record that you understood. Of course, she had counsel at that time when she was given that warning. She was given a warning that if she did not do her biometrics by the time of the next hearing, then her application could be demanded. And she understood that. And then he, the immigration judge then wanted to hear from counsel on that point. So he decided. Your response, just so I understand it, is that before counsel showed up, the judge was already concerned about the biometrics because he had that conversation with the petitioner. Then counsel shows up and they have their sharp exchange about showing up on time and interrupting each other, etc. And then he dismisses because of the absence of biometrics, correct? Yes, your honor. He dismissed because he found there was no good cause established for failure to comply with the biometrics requirements. And so any comments, any that were perhaps insensitive did not prejudice petitioner because ultimately the reason her application was deemed abandoned was her own failure to comply. No, I understand. I understand that. But I don't want to make your arguments for you, but I'm just trying to understand them. Your argument is that he didn't come up with the biometrics as an excuse for dismissing the case because he didn't like counsel. Indeed, he was concerned about the biometrics and talked to petitioner about them even before counsel showed up late. Yes, your honor. He did. Yes. I'm still concerned about the point that your friend makes in a broader sense. We all know that the biometrics will show up sooner or later, whether or not there's been a bureaucratic snafu or if counsel has abandoned their client by not following up on the application. And since the merits hearing was likely to be held on a different day anyway, why not grant at least a brief continuance to get them? Oh, your honor, the merits was scheduled for February 8th that day and petitioner and her counsel were warned in advance that the application could be deemed abandoned if the biometrics were not done by that time. And the reason that the hearing had to be scheduled within that time period was because petitioner, as it was her right to do, requested an expedited hearing, meaning that the immigration judge had to complete, had to issue a decision within six months of when the asylum application was filed. So that would be by mid-April of 2018. So he said the hearing for February and told them well in advance about the biometrics requirement and petitioner stated twice, I believe, on the record that she understood that she had to do that. And of course she had the instructions that DHS had issued, which clearly indicate that if you do not receive a notice, a receipt notice from USTIS or a biometrics appointment that you are supposed to call that number at USTIS within three weeks of having sent your materials and not having heard anything. Counsel admitted on the record that in other cases he had had to send materials two or three times to USCIS. He did not have any reason why he didn't call that number. Is it correct that your opponent says that it was pretty much customary that the, whatever the organization was that was taking those biometrics, the government, that they were behind all the time because of the heavy backlog? Is that in the record or do you know? Your Honor, there's no information about that in the record. I can tell you that I did find out from USCIS that an appointment was actually scheduled for this petitioner on November 24th, 2017, and a notice was sent out to her. And so why didn't the government put that in the record at the hearing? Well, it's not the government's burden, Your Honor. It's petitioner's burden. No, I understand, but if you, I don't think we can consider it now if it wasn't before the IJ. That's correct, Your Honor. My point is only that that number is an essential safeguard because USCIS has hundreds of these applications that are being sent in every day, hundreds of appointments, particularly in the Los Angeles area every day. And so the only way that a petitioner can ensure her right to apply for asylum and to make sure she complies with the biometrics is to call that number. It's a safeguard. And petitioner failed to take advantage of that and to perfect her rights here, which resulted in the abandonment of her application. And it was not an abuse of discretion for the immigration judge to find it deemed abandoned on that basis, Your Honor. I just have a question just about a background issue. There's references in the expedited hearing because they didn't want to stop the asylum clock. Can you explain what background principle at work there that they were considering? I'm sorry, Your Honor, are you asking about the asylum clock and how that works? What does that refer to? I saw that reference in the transcript. I wasn't quite sure what that meant. So I was wondering if you could give me the background. Yes, it refers to the 180-day period after an asylum application is filed. At the end of that 180-day period, an applicant is entitled to seek work authorization, and the clock runs continuously. And if it's not adjudicated? I'm sorry, Your Honor? And if it's not adjudicated? Even if the application is not adjudicated, correct, I believe, Your Honor. What would have happened if the judge had stuck to the January 2019 extension of the hearing? What would the effect been on the asylum clock and her ability to seek work authorization? I'm not entirely sure, Your Honor, but I think that would mean that the clock would, would, I think that she, that would mean that she would waive her time. In other words, waive her right to an expedited hearing. And that work authorization wouldn't go into effect? I think that's, I think that's correct, Your Honor, because any continuances that are caused because of the applicant, the clock actually stops at that point. So, in other words, so that 180-day period is told when someone has a continuance on account of their own request, or in this case, because her attorney was late, and so the immigration judge was going to continue the case for that purpose. Okay. All right. Thank you. Counsel, for petitioner, you've got about a minute for rebuttal. Just to, Judge, I think the petitioner did show good cause for complying with biometric, attending all hearings. Also, the counsel for petitioner did file a motion to continue on January 16, 2018. But not to, but not to obtain, not to obtain the biometrics. No, but the... Was to get more, was to get more evidence, correct? Yes, and believing the biometric will arrive before the hearing. Well, I don't know what counsel believed. I'm just saying what he said to the judge was, I need a continuance to get more evidence, correct? Yes, because if the, if counsel did not believe that biometric would not come on time, he would have added that to his motion to continue. But because of customary practices and immigration law, where all thousand, even millions of biometric have been sent in and sent out, there is assumption of delay that you cannot easily to inquire about it. So I believe... Counsel should have known that before the hearing was set, shouldn't he? I'm sorry, your honor? Counsel should have known that the biometrics were not completed before the time for this hearing, correct? It was not, yes. But she had exerted every effort to submit her application to the biometric two weeks after her hearing, in compliance of the regulations. But however, again, as I said, the judge itself violated the rules for the government, because the government itself has to give a reasonable time to when the biometric should be completed. This is in the case law, in the regulations, and also the BIA itself did adopt a memorandum that is consistent with this regulation and this precedent, saying that the government has to give a reasonable time and advise the petitioner or the respondent about the biometric being taken. Then the judge will take the rule after to set his own time, if it's reasonable, then to advise the petitioner or the respondent about the consequences for failing to comply with these regulations. So I think these were violated by the IJ and the government. Thank you, counsel. I thank both counsel for their briefing and arguments in this case. It will be submitted and this court for this week is adjourned. Thank you. Thank you. This court for this session stands adjourned.
judges: Siler, Hurwitz, Collins